**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION**

| | |
|---|---|
| **JESSE KUZMA, on behalf of himself and all others similarly situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**HEALTHCARE SERVICE CORPORATION,**<br><br>    **Defendant.** | **No. 1:22-cv-217** |

**ORIGINAL
CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Jesse Kuzma files this Original Amended Class and Collective Action Complaint ("Complaint") against Defendant Health Care Service Corporation ("Defendant") and in support states the following:

**Nature of this Lawsuit**

1.      Defendant's operations are defined by three insurance market segments: Group, Government and Retail.[1]

2.      Defendant's Government Market segment is comprised of providing managed care services pursuant to the insurance plans for each state.[2]

3.      Defendant is in business to offer its Blue Cross and Blue Shield branded Medicaid managed care products directly or through wholly owned subsidiaries to Medicaid Programs developed by states.[3]

---

[1] *Id.*
[2] *Id.*
[3] www.hcsc.com/pdf/am-best-ratings-report-2021.pdf (last visited March 24, 2022).

4.      Defendant currently participates in Medicaid Programs in Illinois, New Mexico and Texas.[4]

5.      Defendant has increased its participation in Medicaid Programs by winning contracts in several states to provide managed care services to newly enrolled members under the Medicaid Expansion of the Affordable Care Act.[5]

6.      HCSC Insurance Company Services, Inc. d/b/a Blue Cross and Blue Shield of New Mexico ("MCO Subsidiary") is a directly controlled subsidiary of BCBS and does not have any employees.[6]

7.      From February 2013 to the present, Defendant has participated in New Mexico's Medicaid Program by causing its MCO Subsidiary enter into Medicaid Managed Care Service Agreements with New Mexico's Human Services Department (collectively, "MCO Contract") to provide care coordination and other managed care services to New Mexico Medicaid Enrollees ("Medicaid Members").

8.      All versions of the MCO Contract pertaining to the managed care services provided by Defendant are publicly available on HSD's website,[7] including all versions of the MCO Contract pertaining to providing managed care services as part of HSD's Centennial Care 1.0 Medicaid Waiver Program that ran from January 2013 to December 2017 (1.0 Contract"); and HSD's Centennial Care 2.0 Medicaid Program running from January 2018 to the present ("2.0 Contract").[8]

9.      HSD has entered into nearly identical agreements with other Managed Care Organizations since 2013 including (1) contracts with three other managed care organizations covering

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] www.hsd.state.nm.us/lookingforinformation/medical-assistance-division/ (providing contracts for all MCOs that entered into contracts with HSD to provide managed care services during both time periods).
[8] www.medicaid.gov/Medicaid-CHIP-Program-Information/ByTopics/Waivers/1115/downloads/nm/nm-centennial-care-pa.pdf (providing "Section 1115 Demonstration Waiver renewal application for New Mexico's Medicaid program, Centennial Care.") ("Waiver Renewal Application"), p.106.

the Centennial Care 1.0 Program from January 2013 to December 2017; and contracts with two other managed care organizations covering Centennial Care 2.0 Program from January 2018 to the present.[9]

10.    These contracts—the latest of which spans 448 pages including a nearly 50-page section dedicated to care coordination[10]—detail both Defendant's obligations and those of its employees who perform job duties under the MCO Contract.

11.    Defendant has provided care coordination services for Medicaid Members in accordance with section 4.4 of the MCO Contract, entitled "care coordination," from at least January 2014 to the present.[11]

12.    Defendant has provided care coordination services to Medicaid Members in accordance with 42 C.F.R. 438.208 and the requirements of Section 4.4 of the MCO Contract (collectively, "care coordination services") from at least January 2014 to the present.

13.    Defendant has provided care coordination services to Medicaid Enrollees that complies with NMAC 8.308.10 since at least January 1, 2019.

14.    Defendant employs "care coordinators" to produce the "care coordination" services required under Section 4.4 of the HSD MCO Contract.

---

[9] www.hsd.state.nm.us/lookingforinformation/medical-assistance-division/ (providing contracts for all MCOs that entered into contracts with HSD to provide managed care services during both time periods).

[10] www.hsd.state.nm.us/wp-content/uploads/BCBS-2.0-Contract-PSC-18-630-8000-0033-A5.pdf (providing latest version of BCBS MCO Agreement spanning 448 pages).

[11] See e.g. www.hsd.state.nm.us/wp-content/uploads/BCBSNM-Contract.pdf (containing original MCO Contract for HSD's Centennial Care 1.0 Medicaid Program signed in February 2013) § 4.4; bit.ly/11BCBSHSDContract (containing first amendment to original 1.0 Contract) § 4.4; www.hsd.state.nm.us/wp-content/uploads/files/BCBSNM-Amendment-5-to-Medicaid-Managed-Care-Agreement.pdf (containing fifth amendment to 1.0 Contract effective December 2015), § 4.4; bit.ly/18BCBSHSDContract (containing eighth amendment to 1.0 Contract effective October 2017); www.hsd.state.nm.us/wp-content/uploads/CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf (containing original MCO Contract for HSD's Centennial Care 2.0 Medicaid Program signed in January 2018) ("HSD MCO Contract 2.0"), § 4.4; www.hsd.state.nm.us/wp-content/uploads/BCBS-Contract-PSC-18-630-8000-0033-A1.pdf (containing first amendment to 2.0 Contract, signed in October 2018), § 4.4; www.hsd.state.nm.us/wp-content/uploads/BCBS_A2-Completed.pdf (containing second amendment to 2.0 Contract, effective April 2020), § 4.4; www.hsd.state.nm.us/wp-content/uploads/BCBS-2.0-Contract-PSC-18-630-8000-0033-A4.pdf (containing third amendment to 2.0 Contract, effective October 2021), § 4.4.

15.     The MCO Contract requires Defendant to employ "care coordinators" that meet specific qualifications set by HSD to conduct CNAs for Medicaid Members.

16.     Defendant has employed care coordinators that meet the educational requirements of Section 4.4.12.3 of the MCO Contract in effect throughout the Relevant Time Period. *See e.g.* MCO Contract 1.0, § 4.4.12.3 (providing that the "care coordinator completing the comprehensive needs assessment shall have a bachelor's degree... or two (2) years of relevant experience.");[12] HSD MCO Contract 2.0, § 4.4.12.3 (same).[13]

17.     Defendant employed Plaintiff and other individuals to provide care coordination services, in compliance with the HSD MCO Contract and 42 C.F.R. 438.208, under multiple job titles, including without limitation, "Member Care Coordinator," and "Medical Management Specialist" (collectively, "Care Coordinators").

18.     Defendant paid Care Coordinators a salary.

19.     Defendant's Care Coordinators regularly worked over 40 hours per week.

20.     Defendant classified all Care Coordinators as exempt from state and federal overtime laws and did not pay them overtime wages for all hours worked over 40 hours per week.

21.     Defendant's Care Coordinators primarily performed statutorily (NMAC § 8.308.10) and contractually (HSD MCO K) defined non-exempt work, including (1) producing Health Risk Assessments ("HRAs") that document the medical circumstances of Medicaid Members by collecting and documenting information by asking Medicaid Members standardized questions provided by an HSD-approved HRA Tool in compliance with Section 4.4.2 of the MCO Contract; (2) producing Comprehensive Needs Assessments ("CNAs"), which further document the medical circumstances of Medicaid Members, by collecting and documenting information elicited from Medicaid Members

---

[12] www.hsd.state.nm.us/wp-content/uploads/BCBSNM-Contract.pdf (last visited March 22, 2022).
[13]                         www.hsd.state.nm.us/wp-content/uploads/CC-2_0-BLUE-CROSS-BLUE-SHIELD-NM-SIGNED-CONTRACT.pdf (last visited March 22, 2022).

standardized questions provided by an HSD-approved CNA Tool, in compliance with Section 4.4.3 of the MCO Contract; (3) producing "Care Plans" for Members by using responses to the CNA to document the Member's "Care Plan" by utilizing software pre-approved for use by HSD with Section 4.4.5 of the MCO Contract; and (4) meeting the MCO Contract's mandatory timeframes to produce all required HRAs, CNAs, and Care Plans for assigned Members provided in Section 4.4 of the MCO Contract ("Care Coordination Work").[14]

22.    Plaintiff brings this action on behalf of himself and other similarly situated Care Coordinators who, due to Defendant's misclassification scheme, were not paid all earned overtime pay for time they worked in excess of forty (40) hours in one or more individual work weeks in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

23.    Plaintiff also brings class action claims under New Mexico state law under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-19, *et seq.*

24.    Plaintiff brings his NMMWA claims pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(4) for Defendant's failure to pay him and other Care Coordinators for all earned overtime pay.

25.    Defendant began classifying Care Coordinators as exempt from the NMMWA's overtime protections prior to July 11, 2016.

26.    Defendant continue to classify some or all Care Coordinators as exempt from the NMMWA's overtime protections as of the date of this filing.

27.    Defendant's violations of the NMMWA occurred as part of a continuing course of conduct under N.M. Stat. Ann. § 50-4-32.

---

[14] *See e.g.* NMAC § 8.308.10.9(B) ("The MCO or MCO delegate shall conduct a HSD approved health risk assessment (HRA) either by telephone, in person or as otherwise approved by HSD.... Requirements for the Health Risk Assessment are defined in the HSD managed care policy manual (section 04 care coordination); Id., § 8.308.10.9(C) ("Assignment to care coordination levels two and three: The MCO or MCO delegate shall conduct a HSD approved CNA to assess the member's medical, behavioral health, and long term care needs and determine the care coordination level."); *Id.*, § 8.308.10.9(D) ("The MCO or MCO delegate shall develop a comprehensive care plan (CCP) for members in care coordination levels two and three. Requirements for CCP development are defined in the HSD managed care policy manual (section 04 care coordination).");

28.     Because Defendant's violations of the NMMWA occurred as part of a continuing course of conduct, this action encompasses all overtime violations against Plaintiff and similarly situated Care Coordinators, regardless of the date on which they occurred pursuant to N.M. Stat. Ann. § 50–4–32.

**The Parties**

29.     Plaintiff worked for Defendant as a Care Coordinator in this Judicial District from November 2019 to September 2021.

30.     Defendant is an Illinois Corporation.

31.     Defendant's principal place of business is in Chicago, Illinois.

32.     Defendant is the parent company of HCSC Insurance Services Company, Inc.

33.     Defendant directly controls HCSC Insurance Services Company, Inc. through its Board of Directors.

34.     Defendant does business as Blue Cross and Blue Shield of New Mexico in this state.

35.     HCSC Insurance Services Company, Inc. does business as Blue Cross and Blue Shield of New Mexico in this state.[15]

**Jurisdiction and Venue**

36.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's FLSA claims arise under federal law. *See* 29 U.S.C. § 216(b).

37.     This Court has supplemental jurisdiction over Plaintiff's NMMWA claims under 28 U.S.C § 1367(a) because they arise out of the same facts as Plaintiff's FLSA claims.

38.     Venue is proper in this District under 28 U.S.C. § 1391 because the events forming the basis of the suit occurred in this District.

---

[15] https://www.bcbsnm.com/ ("Blue Cross and Blue Shield of New Mexico, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company, an Independent Licensee of the Blue Cross and Blue Shield Association.") (last visited March 22, 2022).

### Factual Allegations

#### *New Mexico's Medicaid Program*

39.     The New Mexico Human Services Department ("HSD") is the state agency responsible for the administration of the New Mexico Medicaid Managed Care Program ("NM Medicaid Program").

40.     Because HSD has chosen to contract with MCOs, to provide managed care services to Medicaid enrollees, HSD is required to "**ensure, through its contracts,** that each MCO… complies" with specific requirements as a condition of receiving federal Medicaid funding, including providing the following services detailed in 42 C.F.R. 208(b).[16]

41.     The Centers for Medicaid and Medicare Services ("CMS") requires state agencies, like HSD, to submit and obtain prior approval for all contracts with MCOs exceeding $1 million, as a condition to receiving federal Medicaid funding. 42 C.F.R. 438.3.[17]

42.     CMS recently developed measures to "provide information about assessment and care planning processes among MLTSS plan members that can be used by states… [and managed care plans… for quality improvement purposes."[18]

---

[16] *See e.g.* www.hsd.state.nm.us/wp-content/uploads/Presbyterian-Contract.pdf, p. 31, § 4.412 (containing Defendant's February 2013 Medicaid Managed Care Services Agreement entered with the New Mexico Human Services Department, providing that, "The CONTRACTOR shall provide care coordination that complies with 42C.F.R. § 438.208 and all requirements of this Agreement.").

[17] CMS also requires state Medicaid agencies (HSD) that contract with MCOs to develop and maintain a Medicaid Quality Strategy to assess and improve the quality of healthcare and services provided by Managed Care Plans (MCPs). 42 CFR 438.340(a), The State's quality strategy must, among other things, identify "the mechanisms implemented by the State to comply with 42 C.F.R. § 438.208(c)(1) (relating to the identification of persons who need long-term services and supports or persons with special health care needs)." 438.340(b)(8). The State is required to "submit a copy of the initial strategy for CMS comment and feedback prior to adopting it in final." § 438.208(c)(3). "The state must make the final quality strategy available on [HSD's website] under § 438.10(c)(3)" § 438.208(d). Additionally, the state is required to review and update the quality strategy at least once every three years: The review must include an evaluation of the effectiveness of the quality strategy conducted within the previous three years. 42 C.F.R. § 438.208(2). The State is required to make the result of the review available on HSD's website. 42 C.F.R. § 438.208(c)(2)(ii). This information is accessible on the HSD's website at www.hsd.state.nm.us/lookingforinformation/ (last visited October 20, 2021).

[18] https://www.medicaid.gov/medicaid/managed-care/managed-long-term-services-and-supports/index.html (last visited March 22, 2022).

43.     Specifically, in its May 2019 "Technical Specifications and Resource Manual" regarding "Measures Medicaid Managed Long Term Services and Supports Plans published by the Center for Medicare and Medicaid Services" ("CMS Medicaid Manual"), CMS explained the following: The "**person responsible for conducting an assessment and care plan with a member… is not required to have a specific professional license**."[19]

### *The HSD Medicaid Managed Care Contract*

44.     Defendant, either directly or through its MCO Subsidiary, has contracted with HSD to provide care coordination services to Medicaid Members since February 1, 2013.[20]

45.     From February 1, 2013 to December 31, 2017, Defendant, either directly or through its MCO Subsidiary, was one of four managed care organizations ("MCO") to contract with HSD to provide care coordination and other managed care services to individuals enrolled in HSD's Centennial Care 1.0 Medicaid Program.[21]

46.     Between February 1, 2013 and December 31, 2017, Defendant, either directly or through its subsidiary, entered into the 1.0 Contract, and eight amendments to that contract, which lay out the requirements for the care coordination services that Defendant's employees provided to Medicaid Members during that time period.[22]

47.     Section 4.4.12 of the 1.0 Contract provide "care coordination" staffing requirements, including the minimum qualifications that individuals must meet to work as "care coordinators" responsible for "completing comprehensive needs assessments" of Medicaid Members.

---

[19] *Id.*
[20] www.hsd.state.nm.us/wp-content/uploads/Presbyterian-Contract.pdf (Medicaid Managed Care Services Agreement between DEFENDANT and New Mexico HSD) (last visited January 18, 2022).
[21]     www.medicaid.gov/medicaid/section-1115-demonstrations/downloads/nm-centennial-care-cms-final-eval-rpt-03232020.pdf (last visited January 18, 2022).
[22] *See e.g.*

48.     Until Defendant entered into the third amended version of the 1.0 Contract in December 2014, HSD set the following minimum requirements for the care coordinator position in section 4.4.12.3 of the 1.0 Contract:

> …. At a minimum, the care coordinator completing the comprehensive needs assessment shall have a bachelor's degree in social work, nursing or other health care profession and/or two (2) year's relevant experience. A care coordinator's direct supervisor shall be a licensed social worker or registered nurse with a minimum of two (2) years of relevant health care experience.[23]

49.     In December 2014, the HSD amended Section 4.4.12.3 of the CC 1.0 Contract to **lower** the minimum qualifications required to work as a care coordinator completing the CNA:

> ….. At a minimum, the care coordinator completing the comprehensive needs assessment shall have a bachelor's degree and/or two (2) years of relevant health care experience. A care coordinator's direct supervisor shall have a bachelor's degree and a minimum of two (2) years of relevant health care experience.[24]

50.     Prior to December 2014, an individual met HSD's minimum requirements for the care coordinator position if he or she either (1) had a bachelor's degree in "social work, nursing or other health care profession," or (2) two year's relevant experience.[25]

51.     Prior to December 2014, an individual met the requirements to be a direct supervisor of the care coordinator position under the 1.0 Contract if he or she was a "licensed social worker or registered nurse with a minimum of two (2) years of relevant healthcare experience."[26]

52.     After December 2014, the minimum requirements set by HSD did not require an individual to possess a clinical license to qualify to work in the care coordinator position or direct supervisor to the care coordinator position.

---

[23] *See e.g.* www.hsd.state.nm.us/wp-content/uploads/Presbyterian-Contract.pdf (containing copy of CC 1.0), p. 46-47, § 4.4.12.3.

[24] *See e.g.* bit.ly/11BCBSHSDContract (containing first amendment to HSD MCO Contract 1.0 effective February 2013) ("HSD MCO Contract 1.1") § 4.4.13.2.

[25] *Id.*

[26] *Id.*

53.     Defendant, directly or through its MCO subsidiary, is currently one of three MCOs contracted with HSD to provide care coordination and other managed care services to individuals enrolled in New Mexico's Centennial Care 2.0 program from January 1, 2019 to December 31, 2023.[27]

54.     Between January 2018 and the present, Defendant caused its MCO subsidiary to enter into the 2.0 Contract, and several amendments to that contract, which lay out the requirements for the care coordination services provided by Defendants' employees to Medicaid Members during that time period.[28]

55.     Importantly, the minimum qualifications required by HSD for the care coordinator position and the care coordinator direct supervisor position have not changed since December 2014.[29]

56.     Since at least December 2014, HSD has only required an individual to have either a bachelor's degree **or** two years of experience to qualify to perform the work required of the care coordinator position in New Mexico's Medicaid Program since December 2014.

57.     Since 2009, HSD has not required individuals to possess clinical licensure—of any kind—to perform the job duties required of the care coordinator position in New Mexico's Medicaid Program.

58.     Since December 2014, HSD has not required individuals to possess clinical licensure of any kind to qualify to perform the work required of the direct supervisor of the care coordinator position in New Mexico's Medicaid Program.

*Defendant's Core Business: Medicaid Managed Care Service Provider*

---

[27] /www.medicaid.gov/medicaid/section-1115-demonstrations/downloads/annual-monitoring-reports-jan-dec-2020.pdf (HSD's annual report to CMS).

[28] www.hsd.state.nm.us/lookingforinformation/medical-assistance-division/ (providing contracts for all MCOs that entered into contracts with HSD to provide managed care services during both time periods).

[29] *See e.g.* www.hsd.state.nm.us/wp-content/uploads/BCBS-2.0-Contract-PSC-18-630-8000-0033-A5.pdf (providing latest version of MCO Contract), § 4.4.12.3 ("At a minimum, the care coordinator completing the Comprehensive Needs Assessment shall have a bachelor's degree and/or two (2) years of relevant health care experience. A care coordinator's direct supervisor shall have a bachelor's degree and a minimum of two (2) years of relevant health care experience.").

59.    Defendant administers health plan benefits for approximately 574,000 health plan participants in New Mexico.[30]

60.    Of the nearly 574,000 total health plan participants that Defendant administers health plan benefits for in this state, over half were Medicaid Members enrolled in New Mexico's Centennial Care Medicaid Program.[31]

61.    Over 75% of the total health plan participants that Defendant administered health plan benefits for in New Mexico during the year ended December 31, 2021 were health plan participants enrolled in New Mexico's Medicaid Program.[32]

62.    Defendant does not write or sell insurance to Medicaid Members enrolled in New Mexico's Medicaid Program.

63.    Defendant has been required to provide care coordination services to Medicaid Members that complies with 42 C.F.R. 438.208 from at least January 2014 to the present.[33]

64.    As a contractor in New Mexico's Medicaid Program, Defendant has been required and continues to be required to ensure that the care coordination services it provides to New Mexico Medicaid Program enrollees complies with all versions of the 1.0 Contract and 2.0 Contract in effect from February 1, 2013 to the present.

65.    Defendant has been required and continues to be required to ensure that the care coordination services it provides to Medicaid Members complies with all versions of HSD's Managed Care Policy Manual in effect during the Relevant Time Period.

### *Defendant's NCQA & URAC Accreditations*

---

[30] https://www.hcsc.com/pdf/am-best-ratings-report-2021.pdf (last visited March 24, 2022).
[31]    https://www.hsd.state.nm.us/wp-content/uploads/January-By-Managed-Care-Organization-Fee-for-Service-1.pdf (providing that Defendant was responsible for providing managed care services for 291,619 Medicaid Members in January 2022).
[32] *Id.,* pp. 9, 11.
[33] *See e.g.*

66.     Defendant d/b/a Blue Cross and Blue Shield of New Mexico holds an accreditation as a Health Maintenance Organization from the National Committee on Quality Assurance ("NCQA").

67.     In order to maintain its NCQA accreditation, Defendant was required to establish policies and procedures for care coordination and case management that comply with the NCQA accreditation guidelines.

68.     Plaintiff did not create the policies and procedures established for care coordination or case management work required for Defendant to maintain its accreditation with the NCQA.

69.     Care Coordinators did not create the policies and procedures established for case management and care coordination required for Defendant to maintain its accreditation with the NCQA.

70.     Defendant required Plaintiff to follow the policies and procedures Defendant established for case management and care coordination to comply with NCQA's accreditation guidelines.

71.     Defendant required other Care Coordinators to follow the policies and procedures Defendant established for case management and care coordination to comply with NCQA's accreditation guidelines.

***Plaintiff's Employment & Job Duties***

72.     During his employment, Plaintiff primarily performed Care Coordination Work.

73.     During Plaintiff's employment, Plaintiff's job duties included producing CNAs and HRAs in compliance with the required timeframes set by the MCO Contract.

74.     During Plaintiff's employment, Plaintiffs' job duties included producing HRAs to document Medicaid Members' medical circumstances within timeframes set by the MCO Contract.

75.    During Plaintiff's employment, Plaintiff's job duties included by using an HRA-tool, pre-approved by HSD, to collect and document information related to Medicaid Members' medical circumstances.

76.    During Plaintiff's employment, Plaintiff's job duties included conducting producing CNAs to document Medicaid Members' medical circumstances within timeframes set by the MCO Contract.

77.    During Plaintiff's employment, Plaintiff's job duties included traveling to member homes to conduct in-person CNAs with Medicaid Members.

78.    During Plaintiff's employment, Plaintiff's job duties included using a CNA tool, pre-approved by HSD, to collect and document Medicaid Members' medical circumstances.

79.    During Plaintiff's employment, Plaintiff's job duties included using CNA results to document the Care Plans of Members within timeframes set by the MCO Contract.

80.    During Plaintiff's employment, Plaintiff's job duties included using software approved by HSD to fill in drop down boxes with results from the CNA to create Care Plans for Members.

81.    During Plaintiff's employment, Plaintiff was required to complete CNAs for Care Coordination level 2 members.

82.    During Plaintiff's employment, Plaintiff was required to complete CNAs for Care Coordination level 3 members.

83.    During Plaintiff's employment, Plaintiff was required to complete CNAs within the required timeframes set by HSD in the MCO Contract.

84.    During his employment, Plaintiff's job duties did not include managing Defendant's business.

85.    During Plaintiff's employment with Defendant, Plaintiff's job duties did not include supervising two or more employees.

86.     During Plaintiff's employment, Plaintiff's job duties did not include directing the work of individuals employed by Defendant's customers.

87.     During Plaintiff's employment, Plaintiff's job duties did not include overseeing the work of individuals employed by Defendant's customers.

88.     During Plaintiff's employment with Defendant, Plaintiff's job duties did not include managing any of Defendant's business departments or any subdivisions of such departments.

89.     During Plaintiff's employment, Plaintiff did not direct the work of two or more full-time employees in any week during Plaintiff's employment.

90.     During Plaintiff's employment, Plaintiff never hired, fire, promoted or otherwise change the status of another employee.

91.     During Plaintiff's employment, Plaintiff did not have the authority to hire, fire, promote or discipline another employee.

92.     During Plaintiff's employment, Plaintiff never provided Defendant with a written recommendation to hire, fire, promote or discipline any individual that resulted in that individual actually getting hired, fired, promoted or disciplined by Defendant.

93.     During Plaintiff's employment, Plaintiff did not have the authority to formulate, affect, interpret, or implement Defendant's management or operating practices for its business.

94.     During Plaintiff's employment, Defendant did not have the authority to deviate from the procedures and timeframes set by the MCO Contract for care coordination under section four of the MCO Contract without prior approval from HSD.

95.     Plaintiff did not have the authority to deviate from the procedures and timeframes set by the MCO Contract for the care coordination services he provided with approval from Defendant.

96.      Plaintiff did not have the authority to deviate from the procedures and timeframes set by the MCO Contract for the care coordination services he provided without Defendant's approval.

14

97.    During Plaintiff's employment, Plaintiff's job duties did not include providing expert advice to Defendant's management on how they could more efficiently or profitably provide care coordination services.

98.    During Plaintiff's employment, Plaintiff's job duties did not include providing expert advice to HSD on how to more efficiently provide care coordination services.

99.    During Plaintiff's employment, Plaintiff's job duties did not involve planning the long-term or short-term business objectives of Defendant or Defendant's customers.

100.    During Plaintiff's employment, Plaintiff's job duties did not include trouble shooting or problem solving on the behalf of the management of Defendant.

101.    During Plaintiff's employment, Plaintiff did not set budgets for Defendant's business or any segment of Defendant's business.

102.    During Plaintiff's employment, Plaintiff never created a corporate policy or operating procedure that has been followed by one of Defendant's other employees.

103.    Plaintiff's job duties were routine and rote and did not include the exercise of discretion and independent judgment with respect to matters of significance.

104.    During his employment, Plaintiff's job duties did not involve providing traditional nursing care to patients in a clinical setting.

105.    During his employment, Plaintiff's job duties did not involve providing traditional nursing care to treat patients in a clinical setting.

106.    During his employment, Defendant did not provide Plaintiff with medical malpractice coverage for liability incurred for work performed within the scope of his job duties.

107.    During his employment with Defendant, Plaintiff never possessed a clinical license, or state-issued license of any kind, other than his driver's license.

108.    Defendant has never required individuals to possess a clinical license, of any kind, to perform HRAs or CNAs.

109.    Defendant has always required individuals to possess a driver's license to conduct CNAs for Medicaid Members under the MCO Contract.

110.    Defendant has never required individuals to possess a clinical license to perform HRAs or CNAs for Medicaid Members because such licensure has never been required by the MCO Contract.

111.    Defendant required Plaintiff to work over 40 hours in one or more individual workweeks in the last three (3) years.

112.    During his employment with Defendant, Plaintiff worked over 40 hours in one or more individual workweeks in the last three (3) years.

113.    Defendant classified Plaintiff as exempt from the overtime provisions of the FLSA and NMMWA.

114.    Because Plaintiff primarily performed non-exempt work, Defendant should have classified her as non-exempt.

115.    Defendant paid Plaintiff a salary.

116.    When Plaintiff worked over 40 hours in individual workweeks, Defendant did not pay her overtime at one-and-one-half times her regular rate of pay for hours worked over 40.

117.    The Care Coordination Work performed by Plaintiff and other Care Coordinators was provided to Members under the "Blue Cross and Blue Shield of New Mexico" trade name.

118.    Defendant maintained control, oversight and direction over its operations and employment practices pertaining to Plaintiff.

119.    Defendant maintained control, oversight and direction over its operations and employment practices pertaining to Care Coordinators other than Plaintiff.

120.    Defendant maintained control, oversight and direction over Plaintiff, including over timekeeping, payroll and other employment practices that applied to him.

121.    Defendant maintained control, oversight and direction over Care Coordinators other than Plaintiff, including over timekeeping, payroll and other employment practices that applied to them.

122.    Defendant employed Plaintiff to produce Care Coordination Work for HSD consistent with the requirements and mandatory timeframes set forth by the MCO Contract.

123.    Defendant employed Care Coordinators to produce Care Coordination Work for HSD consistent with the requirements and mandatory timeframes set forth by the MCO Contract.

124.    During his employment, Plaintiff was an "employee" of Defendant as defined by the FLSA in 29 U.S.C. § 203(e).

125.    During her employment, Plaintiff was an "employee" of Defendant as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(c).

126.    During her employment, Defendant was Plaintiff's "employer" as defined by the FLSA in 29 U.S.C. § 203(d).

127.    During her employment, Defendant was Plaintiff's "employer" as defined by the NMMWA in N.M. Stat. Ann. § 50-4-21(b).

128.    Defendant is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

129.    Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

130.    Defendant has had more than $500,000 in sales made or business done in each of the last three calendar years.

**Continuing Course of Conduct Allegations**

131.    In 2009, the New Mexico 49th Legislature unanimously passed—and the governor signed—House Bill 489.  House Bill 489 became effective June 19, 2009. With House Bill 489's passage, the statute of limitations for wage claims, including unpaid overtime claims, under the NM Wage Act was extended from one year to three years. NMSA 1978 § 37-1-5. Also, effective June 19, 2009, the statute of limitations under the NM Wage Act is tolled when the violation is part of a "continuing course of conduct."  NMSA 1978 § 50-4-32.

132.    Defendant has administered health plan for customers since acquiring the assets of Blue Cross and Blue Shield of New Mexico in 2001.

133.    Defendant has contracted with HSD to provide care coordination services since at least February 2013.

134.    Defendant have employed one or more Care Coordinators that they paid on a salary basis and classified as exempt since at least January 1, 2014.

135.    Defendant have employed one or more Care Coordinators in New Mexico that it paid on a salary basis since at least June 19, 2009.

136.    In one or more work weeks prior to July 11, 2016, Defendant employed Care Coordinators in New Mexico who were classified as exempt and paid on a salary basis.

**Collective Action Allegations**

137.    Plaintiff brings his FLSA claims as a collective action.

138.    Plaintiff's consent form to participate in this collective action is attached to this Complaint as Exhibit A.

139.    The collective action is defined as follows:

All individuals employed by Defendant as Care Coordinators in New Mexico in the last three years who were paid a salary and were classified as exempt from overtime under the FLSA ("Collective Action Members"). This definition specifically excludes the portion of the claims released by Care Coordinators who participated in the settlement reached by the Plaintiffs in *Candelaria v. Healthcare Service Corporation*, No.

2:17-cv-404, ECF 84 (D.N.M. Nov. 4, 2020) (approving class and collective action settlement).

140.    Plaintiff is similarly situated to potential Collective Action Members because they were paid the same way and performed the same primary job duties as Collective Action Members.

141.    In the last three years, Defendant employed individuals who performed the same primary job duties as Plaintiff.

142.    Of Defendant's employees who performed the same primary job duties as Plaintiff in the last three years, Defendant classified some or all as exempt from the overtime provisions of the FLSA and paid them a salary.

143.    Of employees Defendant classified as exempt and who performed the same primary job duties as Plaintiff in the last three years, some or all worked over 40 hours in individual workweeks.

144.    Defendant maintained one or more common job descriptions for Care Coordinators.

145.    Defendant, either directly or through its MCO Subsidiary, was required to provide HSD with one or more versions of a "Care Coordination Staffing Plan" pursuant to the MCO Contract, which at a minimum required the following:

> (i) the number of care coordinators, care coordination supervisors, other care coordination team members the CONTRACTOR plans to employ; (ii) the ratio of care coordinators to Members; (iii) the CONTRACTOR's plans to maintain ratios in accordance with the maximum ratios in Section [4.4.12.5] of this Agreement; (iv) an explanation of the methodology for determining such ratios; (vi) how the CONTRACTOR will ensure that such ratios are sufficient to fulfill the requirements specified in this Agreement; (v) the roles and responsibilities for each member of the care coordination team; and (vi) how the CONTRACTOR will use care coordinators to meet the needs of New Mexico's unique population.

146.    Defendant, either directly or through its MCO subsidiary, is required to have specific policies and procedures that specify the specific qualifications, experience and training provided to Care Coordinators.

147.    Defendant provided standardized initial training to newly hired Care Coordinators and ongoing training at least annually to all Care Coordinators.

148.    Defendant have the names and addresses for potential Collective Action Members in their payroll or personnel records.

149.    Defendant have email addresses for potential Collective Action Members in their payroll or personnel records.

150.    Defendant have phone numbers for potential Collective Action Members in their payroll or personnel records.

151.    Defendant are aware or should have been aware that the FLSA required them to pay potential Collective Action Members overtime because they primarily performed non-exempt work.

**Class Action Allegations**

152.    Plaintiff brings his NMMWA claims as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

153.    Plaintiff seeks class certification under Fed. R. 23 of the following state law class:

All individuals employed by Defendant as a Care Coordinator in New Mexico who were paid on a salary basis and classified as exempt from overtime (the "Class").

154.    The Class has over 100 members.

155.    As a result, the Class is so numerous that joinder of all members is not practical.

156.    There are questions of law or fact common to the Class, including: (1) whether members of the Class primarily performed non-exempt work; (2) whether Defendant violated the NMMWA by refusing to pay members of the Class overtime pay; (3) the proper measure of damages if Defendant misclassified members of the Class as exempt from the overtime provisions of the NMMWA; (4) whether Defendant violated the NMMWA as part of a continuing course of conduct under NMSA 1978 § 50-4-32.

157.    Plaintiff overtime claims are typical of those of the Class because they arise out of Defendant's uniform compensation practices.

158.    Defendant's defenses to Plaintiff's claims are typical of its defenses to those of the Class because they are grounded in the same compensation practices.

159.    Plaintiff can fairly and adequately protect the interests of the Class because she is asserting the same claims as the Class.

160.    Plaintiff can fairly and adequately protect the interests of the Class because she has no interests adverse to the Class.

161.    Plaintiff can fairly and adequately protect the interests of the Class because she has retained counsel experienced in class action employment litigation, including against this Defendant and other MCOs contracted with HSD that have classified care coordination workers as exempt from overtime.

162.    The common questions of law and fact in this lawsuit predominate over the variations which may exist between members of the Class, if any.

163.    Common proof will drive the resolution of the predominating questions in this case.

164.    For example, the MCO Contract and the CMS Medicaid Manual referenced above, establish that no clinical licensure or education capable of satisfying the professional exemption is required to perform the care coordination services provided by the Class.

165.    Moreover, the MCO Contract, HSD's Managed Care Policy Manual, NMAC 8.308.10, NCQA accreditation guidelines, 42 C.F.R. § 438.208, and Defendant's policies intended to enforce those other requirements all define and control the job duties performed by Care Coordinators including how they were performed, the tools they were required to use in performing those job duties, and the timeframes they had to meet in performing them.

166.    Plaintiff and the members of the Class on the one hand, and Defendant on the other, have a commonality of interest in the subject matter of this lawsuit and remedy sought, namely back wages, interest, penalties, attorneys' fees, and costs.

167.    If individual actions were required to be brought by each member of the Class injured or affected, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals and to the Court, as well as to Defendant.

168.    Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

169.    The books and records of Defendant are material to the claims of the Class because they disclose the hours worked by each member of the Class and the rate of pay for that work.

### COUNT I
### Violation of the Fair Labor Standards Act
### (Collective Action)

170.    Plaintiff incorporate here the previous allegations of this Complaint.

171.    This count arises from Defendant's violation of the FLSA by failing to pay overtime wages to Plaintiff and Collective Action Members when they worked over 40 hours in individual workweeks.

172.    Plaintiff was not exempt from the overtime provisions of the FLSA.

173.    The Collective Action Members were not exempt from the overtime provisions of the FLSA.

174.    Plaintiff was directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks during the prior three years.

175.    Other Collective Action Members were directed by Defendant to work, and did work, over 40 hours in one or more individual workweeks during the prior three years.

176.    Defendant paid Plaintiff a salary.

177.    Defendant paid other Collective Action Members a salary.

178.    Defendant violated the FLSA by failing to pay overtime to Plaintiff at one-and-one-half times her regular rate of pay when she worked over 40 hours in one or more individual workweeks.

179.     Defendant violated the FLSA by failing to pay overtime to other Collective Action Members at one-and-one-half times their regular rates of pay when they worked over 40 hours in one or more individual workweeks.

180.     Defendant's violations of the FLSA were willful because they received complaints from Care Coordinators that alerted Defendant that they were paying one or more of those employees incorrectly, including a lawsuit filed in the District of New Mexico by a group of employees on April 3, 2017.

181.     Alternatively, Defendant's violations were willful because they classified other employees who performed many of the same primary job duties as Care Coordinators as non-exempt from the FLSA's overtime requirements.

WHEREFORE, Plaintiff, on behalf of himself and the Collective Action Members, seek a judgment against Defendant, jointly and severally, as follows:

A.     All unpaid overtime wages due to Plaintiff and the Collective Action Members;

B.     Liquidated damages equal to the unpaid overtime compensation due;

C.     Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit; and

D.     Such other relief as this Court deems appropriate.

**COUNT II**
**Violation of the New Mexico Minimum Wage Act**
**Class Action**
**(Class Action)**

182.     Plaintiff incorporate here the previous allegations of this Complaint.

183.     This count arises from Defendant's violation of the NMMWA for its failure to pay Plaintiff and the Class overtime pay when they worked over 40 hours in individual workweeks.

184.     Defendant classified Plaintiff as exempt from the overtime provisions of the NMMWA.

185.    Defendant classified members of the Class as exempt from the overtime provisions of the NMMWA.

186.    Plaintiff was not exempt from the overtime provisions of the NMMWA.

187.    Members of the Class were not exempt from the overtime provisions of the NMMWA.

188.    Plaintiff was regularly directed to work by Defendant, and did work, over 40 hours in individual workweeks.

189.    Members of the Class were regularly directed to work by Defendant, and did work, over 40 hours in individual workweeks.

190.    Defendant violated the NMMWA by failing to pay Plaintiff and members of the Class overtime at one and one-half times their regular rates of pay when they worked over 40 hours in individual workweeks.

191.    Defendant's violations of the NMMWA with respect to the Class occurred as part of a continuing course of conduct under N.M. Stat. Ann. in § 50-4-32.

192.    Because Defendant's violations of the NMMWA with respect to the Class occurred as part of a continuing course of conduct, Plaintiff and members of the Class are entitled to recover for all such violations regardless of the date on which they occurred.

WHEREFORE, Plaintiff, on behalf of himself and the Class, seeks a judgment against Defendant, as follows:

A.    All unpaid overtime wages due to Plaintiff and the Class;

B.    Treble damages equal to double the unpaid overtime compensation due;

C.    Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

D.    Such other relief as this Court deems appropriate.

Respectfully submitted,

s/Jack Siegel
JACK SIEGEL
Jack@siegellawgroup.biz
Texas Bar No. 24070621
Siegel Law Group PLLC
5706 E. Mockingbird Lane | Suite 115
Dallas, Texas 75206
P: (214) 790-4454
www.4overtimelawyer.com

TRAVIS M. HEDGPETH
Texas Bar No. 24074386
THE HEDGPETH LAW FIRM, PC
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
P: (281) 572-0727
travis@hedgpethlaw.com

**Attorneys for Plaintiff and others similarly situated**

## CERTIFICATE OF SERVICE

Service of this Complaint will be made on Defendant along with a copy of the summons to be issued by the clerk according to the federal rules of civil procedure.

*/s/   Jack Siegel*
Jack Siegel